FRANK R. POZZIE, Plaintiff-Appellant, v. MIKE SMITH, INC., Defendant-Appellee.

(Nos. 58600, 59580;

First District (4th Division)—October 22, 1975.

Harold A. Katz and Jerome Schur, both of Katz & Friedman, and Louis G. Davidson, of Louis G. Davidson & Associates, Ltd., both of Chicago, for appellant.

Tom Yates, of Chicago (Carl E. Abrahamson, of counsel), for appellee.

Mr. JUSTICE BURMAN delivered the opinion of the court:

Plaintiff, Frank Pozzie, brought this action to recover damages for personal injuries sustained while he was unloading a trailer owned by defendant, Mike Smith, Inc. After a trial by jury, judgment was entered for plaintiff in the amount of $15,000. On appeal plaintiff contends that the damages awarded were palpably inadequate and requests a new trial solely on the issue of damages. Questions concerning evidentiary rulings and jury instructions are also raised.

The record establishes that plaintiff was employed by International Harvester as an industrial fork lift driver. As part of his employment responsibilities, plaintiff would drive his fork lift into truck trailers for the purpose of unloading the contents thereof. It was the custom between International Harvester and the defendant that the latter, as owner of of the trailers, would drive them to a specified area on Harvester's premises for loading and unloading merchandise.

On May 9, 1966, plaintiff was assigned to remove pallets from a trailer owned by defendant. Pallets are wooden structures containing merchandise designed so as to permit their movement by fork lifts. After plaintiff had unloaded roughly one-half of the pallets, he again drove his fork lift into the trailer to carry out another pallet. He maneuvered the fork lift into position, inserted the fork beneath the pallet and began to lift it. Having lifted the pallet about one foot off the trailer floor, plaintiff began to back the fork lift out of the trailer in the customary manner. Plaintiff testified that the fork lift suddenly lurched downwards and

toward the left. The left front wheel had fallen through a hole in the trailer floor. The sudden jerk flung plaintiff against the trailer wall. He bounded off the wall and was thrown back against the fork lift seat. Plaintiff then slid off the lift truck and fell to the trailer floor.

Patrick McInerney testified on behalf of plaintiff and stated that he too was employed by International Harvester. He testified that at the time plaintiff was injured, he was also inside the trailer. McInerney stated that he heard a noise and then observed that the fork lift, which was situated half in and half out of the trailer, was tilted out of its normal position. McInerney then ran out of the trailer onto the loading dock. Plaintiff also left the trailer. McInerney testified that when plaintiff came out of the trailer, he was rubbing his shoulder and indicating that he was in difficulty or pain.

Both plaintiff and McInerney testified that when they returned to the trailer, they noticed that the lift's front left wheel had fallen through a hole in the trailer bottom. The hole was obscured by the pallet plaintiff was removing. Moreover, it was covered with a piece of cardboard and could not be seen. The hole was irregularly shaped and a foot to a foot and a half long. It was sufficiently deep to cause the right front wheel to float in the air when the left front wheel was in it. Further testimony established that the trailer was dark and that the only light in it was that affixed to the lift truck.

Much of the testimony adduced at trial related to the issue of damages. Briefly, the evidence established that after plaintiff's accident, he encountered severe back problems. His problems culminated in January of 1967 when he was admitted to a hospital for surgery upon his spine. An anterior spinal fusion was performed; however, one medical expert characterized the operation as unsuccessful. Defendant maintained throughout the trial that plaintiff's condition was preexisting. Defendant produced expert testimony that since birth plaintiff suffered from spondyloithesis, which is a spinal condition that means one of the vertebrae has slipped.

We first consider plaintiff's contention that the damages awarded were inadequate and caused by prejudicial error. The controversy arises from the fact that the subject of Workmen's Compensation was brought to the attention of the jury. Both parties agree that evidence of the receipt of Workmen's Compensation benefits is highly prejudicial and may not be introduced in a jury trial for negligence. (*Bryntesen v. Carroll Construction Co.*, 27 Ill.2d 566.) However, the parties disagree as to who was responsible for the disclosure. Defendant contends that counsel for plaintiff introduced the subject and cannot now complain of his own

error. Defendant stresses that it was plaintiff's counsel who upon redirect examination of plaintiff first used the words "Workmen's Compensation." We agree with defendant that counsel may not complain of error he himself evoked. But upon careful review of the record, it is our judgment that defendant was responsible for this occurrence.

■■ On cross-examination of plaintiff, defendant's counsel inquired, "Did you make a claim against International Harvester (his employer) for injuries to your back, leg and hips for an accident that happened on Oct. 4, 1966?" Counsel for plaintiff objected to the question and his objection was overruled. Plaintiff was then requested to review an exhibit. Defense counsel asked "* * * [D]oes that refresh your recollection as to whether or not you filed a claim against International Harvester for injuries to your back * * *?" Other questions employing the word "claim" were also posed, however, we do not feel it is necessary to relate them all here. We are satisfied that while defendant's counsel used the phrase "claim against International Harvester for injury" rather than "Workmen's Compensation claim," his language clearly and erroneously informed the jury that plaintiff may have been compensated by his employer for his injuries and that therefore his damages should be reduced. Thus, while it is true that the words "Workmen's Compensation" were first uttered by counsel for plaintiff, the subject unmistakably was injected into the trial by defense counsel. His use of the word "claim" was highly prejudicial and could easily explain why the jury returned a verdict of only $15,000 for the injuries alleged by plaintiff.

■■ We have reviewed the record and conclude that the evidence clearly establishes liability. The only occurrence witnesses were plaintiff and McInerney. Both testified that there was a hidden hole in the trailer bottom, that plaintiff's fork lift fell into the hole, and that as a result plaintiff was injured. No contrary evidence was offered. Where the question of damages is separate and distinct from the issue of liability, this court may set aside a verdict and order a new trial solely on the issue of damages. (*Paul Harris Furniture Co. v. Morse*, 10 Ill.2d 28.) We conclude that such is the case here. There is nothing in the record to suggest that the jury's verdict of $15,000 resulted from a compromise on the question of liability. For the foregoing reasons the cause is remanded to the trial court with direction to grant a new trial solely on the issue of damages.

■■ For the purpose of guiding the court we shall dispose of other questions relating to the issue of damages. The record shows that during cross-examination of plaintiff, defense counsel questioned him as to whether he had operated a pickup truck with a snow-plow attachment

in 1969 long after his injury and subsequent surgery. This was proper to the extent it commented upon plaintiff's capacity to perform physical activities. However, defense counsel went further. He introduced into evidence plaintiff's 1970 income tax return. Despite repeated admonitions from the court, defense counsel persistently questioned plaintiff with regard to the details of his return. Counsel made such inquiries as whether he purchased a snow blower, whether he claimed it as a business expense, and whether he scheduled income for snow removal services. This cross-examination was clearly improper, for it concerned plaintiff's income tax returns rather than his ability to perform physical acts. It served only to imply that plaintiff was dishonest and attempted to cheat the government out of tax revenue. Upon retrial of this cause, interrogation into such irrelevant matters should not be repeated.

■■ A second matter which demands our attention relates to certain jury instructions. One of defendant's primary defenses was that plaintiff's condition was preexisting. The law is clear that a tortfeasor is liable for the injuries he causes, even though the injuries might not have followed but for the peculiar preexisting weaknesses of the injured person. (*Chicago City Ry. Co. v. Saxby*, 213 Ill. 274; Prosser, Handbook of the Law of Torts § 43 (4th ed. 1971).) Plaintiff tendered four jury instructions regarding the aggravation of a preexisting condition. The only instruction given to the jury was IPI—Civil 2d 30.03, a general instruction advising the jury to compensate plaintiff for among other things "the aggravation of any pre-existing condition." The other three instructions which were refused sought to further clarify the law. Plaintiff's Instruction 14 informed the jury that plaintiff's right to recover damages for his injuries and disabilities is not limited by the fact that plaintiff's injuries and disabilities resulted from the aggravation of a preexisting condition. Instruction 15 advised the jury that damages should not be reduced because the injuries and resulting disability were due in part to a preexisting condition of plaintiff. Instruction 16 stated that it is not a defense to this action that plaintiff, because of a preexisting physical condition, was more susceptible to injury than other persons might have been. These three instructions are not in IPI. However, IPI instructions are not intended to be all inclusive. We believe that Plaintiff's Instructions 14, 15 and 16 are each a correct statement of the law, and that the failure of the trial court to give at least one of them, with or without modification, left the jury without proper judicial guidance. In this case the singular submission of IPI—Civil 2d 30.03 inadequately advised the jury of its duty under the law.

For the foregoing reasons the cause is remanded to the trial court with

directions to enter judgment against the defendant on the issue of liability and to grant a new trial solely on the issue of damages in conformity with the views herein expressed.

Affirmed in part and reversed in part and remanded with directions.

DIERINGER, P. J., and ADESKO, J., concur.