Joseph L. REISING and Lenilda M. Reising, Plaintiffs–Appellants,

v.

UNITED STATES of America, Defendant–Appellee.

No. 94–2311.

United States Court of Appeals, Seventh Circuit.

Argued May 11, 1995.

Decided July 20, 1995.

Rehearing and Suggestion for Rehearing En Banc Denied Aug. 30, 1995.

**1242**

William J. Harte (argued), Chicago, IL, Gregory K. Harris, Carol J. Hansen–Fines, Giffin, Winning, Cohen & Bodewes, Springfield, IL, Raymond Funderburk, Neal & Associates, Chicago, IL, and Joan M. Mannix, Harte & Associates, Chicago, IL, for plaintiffs-appellants.

James M. Kuhn, Asst. U.S. Atty. (argued), Office of the U.S. Atty., Chicago, IL, Thomas P. Walsh, Asst. U.S. Atty., and Michele S. Schroeder, Office of the U.S. Atty., Civil Div., Chicago, IL, for defendant-appellee.

Before CUDAHY, ESCHBACH and RIPPLE, Circuit Judges.

CUDAHY, Circuit Judge.

Joseph Reising (Reising) appeals the district court's determination of damages resulting from an automobile accident with a government postal employee. Reising argues that he is entitled to greater compensation than that awarded by the district court. Reising's wife, Lenilda, also appeals the district court's denial of her claim for lack of consortium. The district court awarded Reising medical costs and pain and suffering damages but denied claims for lost income and loss of consortium. We affirm.

## I. Facts

This claim arises from an automobile collision between a Postal Service employee and Joseph Reising, a then 56–year–old insurance salesman, on May 20, 1987. The government has admitted that the postal employee was responsible for the accident and was acting within the scope of his employment at the time. Consequently, the government agreed to compensate Reising for the value of his car, which was damaged beyond repair. The government also paid Reising's medical bills from hospitals and doctors who treated him at the time of the accident.[1] Finally, the district court awarded Reising $10,000 in damages for pain and suffering related to those injuries for which the government admits fault. These findings are uncontested here.

However, Reising claims that he suffered additional injuries which should also be compensated. Specifically, he alleges that the accident also severely injured his lower back. About a week after the accident, Reising began to experience pain in his back. The pain worsened, and within a few weeks began to radiate down Reising's leg. He underwent several medical tests to discover the cause of the problem, which showed nothing more severe than a bulging disc at the L4–L5 lumbar area. Reising's pain continued, however, and he eventually sought treatment at the Mayo Clinic. There he had surgery in 1990 to remove a small portion of an extruded disc in his back. The pain continued, now traveling down both legs, and Reising had a second surgery in 1992 to fuse the L3 and L4 vertebrae.

As a result of these back problems, Reising alleges that he continues to live with significant pain, which has impeded his normal life and has forced him to sell a large part of his insurance business. His wife also brings a loss of consortium claim, alleging that the back pain has deprived her of the services and society of her husband.

The district court found that Reising had suffered from significant back problems before the accident and that he had neglected to inform the doctors who treated him after the accident, and who testified in this case, of

---

1. Reising suffered headaches, dizziness, bruises and a cerebral concussion from the accident.

The government is paying the costs of his three

these prior problems.[2] Nevertheless, the court concluded that the 1987 accident aggravated or accelerated Reising's existing condition, and that he was therefore entitled to at least partial compensation for costs and pain related to his back surgeries. Consequently, the district court awarded Reising an additional $150,000 in damages for pain and suffering from the aggravation of his back condition, as well as compensation for all medical and hospital bills arising from treatment of his back and the two surgeries. However, the district court denied Reising's claim for lost income and Mrs. Reising's loss of consortium claim.

## II. Discussion

Reising first argues that the accident caused *all* of his back problems, rather than just aggravating or accelerating a preexisting condition as the district court concluded. Further, he claims that even if the accident only aggravated or accelerated a prior condition, he should still have received damages for future pain and suffering, lost income, loss of consortium and "loss of a normal life." Appellant's Br. at 43. The government contends that the district court's award was already generous and should not be increased.

"[U]nder the FTCA [Federal Tort Claims Act], damages determinations are governed under the clearly erroneous standard, and the nature and measure of damages are assessed according to state law. We cannot overturn the district court's damage award unless its factual basis is clearly erroneous." *Doe v. United States,* 976 F.2d 1071, 1083 (7th Cir.1992) (internal citations omitted), *cert. denied,* —— U.S. ——, 114 S.Ct. 58, 126 L.Ed.2d 28 (1993); *see also, Soto v. United States,* 11 F.3d 15, 18 (1st Cir.1993).

### A. Damages for Aggravation and Acceleration

■ Reising first argues that the accident was the cause of all the injuries to his back

and that he should be compensated for all past, present and future medical expenses, pain and suffering and "inability to perform household tasks" resulting from his back problems. However, the district court found that Reising had suffered significant back pain before the accident and all the experts agreed that deterioration of the discs in Reising's back, including some bulging discs, was part of the aging process and not caused by the accident. Mem.Op. at 5, 1994 WL 118287. The court found this evidence so persuasive, in fact, that it was on the "brink of concluding that the Plaintiff has failed to show by a preponderance of the evidence that the automobile accident of May 1987 caused his back problems." Mem.Op. at 12.

The court did note, however, that the pain radiating down Reising's leg first appeared after the accident. Therefore, the court concluded that "some limited acceleration or aggravation of Reising's back problems resulted from his accident." Mem.Op. at 12. Specifically, the court found that the "accident either caused the extruded portion of the disk between L4 and L5 or caused the new radiating pain down the leg or both," Mem. Op. at 12–13, but could not tell "whether the disk, which had already deteriorated and bulged before the accident, would have extruded later from the aging process." Mem. Op. at 13.

There was evidence at the trial that Reising would have suffered many back problems as he aged, even if the 1987 accident had never occurred. The district court carefully weighed the credibility of the various medical experts and the evidence presented, and determined that the accident only caused a "limited" worsening of Reising's back problems. We owe such findings substantial deference, and there was ample evidence here of back impairments suffered by Reising before the accident (*see, infra,* note 2). Therefore, we see no reason to overturn the district court's determination that the accident

---

days of hospitalization, including the various medical tests he underwent at that time.

**2.** Reising was in a car accident in 1963 which caused him to be hospitalized for 18 days with a back injury. In 1973, he was in another accident

and was again hospitalized for 10 days. As a result of these injuries and other apparent degeneration in his back, Reising had been seeing a chiropractor and taking medication for back pain shortly before the accident at issue here.

caused only a limited acceleration or aggravation of Reising's preexisting condition.

■ Reising also argues, however, that even if the accident only accelerated or aggravated a preexisting condition, the award of $150,000 is still inadequate to compensate him for all past, present and future pain and suffering, as well as disability with respect to the performance of household tasks caused by the aggravation of his back injury. Reising is correct that "a tortfeasor is liable for the injuries he or she causes, even though the injuries consist of the aggravation of a preexisting condition. Further, a plaintiff ... may recover damages also for ... the acceleration of a progressive disease." *Gruidl v. Schell,* 166 Ill.App.3d 276, 116 Ill. Dec. 748, 752, 519 N.E.2d 963, 967 (1988). A plaintiff, however, "can recover only for that part of his suffering that proximately resulted from the defendant's negligence and was thereby activated, aggravated, or accelerated." *Gruidl v. Schell,* 116 Ill.Dec. at 52–53, 519 N.E.2d at 967–68; *see also Balestri v. Terminal Freight Coop. Assoc.,* 76 Ill.2d 451, 31 Ill.Dec. 189, 191, 394 N.E.2d 391, 393 (1979), *cert. denied,* 444 U.S. 1018, 100 S.Ct. 671, 62 L.Ed.2d 648 (1980).

■ Here the district court concluded that, although the accident did cause some new pain and impairments for Reising, the amount of the suffering that resulted from the accident, rather than from the normal progression of the preexisting condition, was "limited." Therefore, the court determined that $150,000 would adequately compensate Reising for the part of his back pain caused by the accident. For the same reason, the district court ordered compensation for the costs of a maid and yard worker that the Reisings had employed, but did not award future compensation for their services. Again, given the evidence of Reising's past back condition, the inability of the experts to conclusively rule out the possibility that all of Reising's back problems might still have occurred had the accident never happened and the district court's careful consideration of the issue, *see* R.O.A., Tr. 528–542, we do not find that the district court abused its discretion in making these damage awards.

It is reasonable to assume, as the district court did, that age and Reising's already degenerating back would have eventually caused him pain and limitations of mobility even without the accident. Reising received an award covering all the medical expenses related to his back, even though his degenerative condition might well have required surgery regardless of the accident. He also received compensation for all the bills he submitted for house and yard work in the years following the accident, and an additional $150,000 in pain and suffering damages. This award is sufficient, as the district court found, to "adequately and fairly compensate[ ] Mr. Reising for his increased suffering as a result of the accident." The failure to provide future damages is not inconsistent with the evidence, and the district court's damage awards are not clearly erroneous.

### B. Lost Income

■ Reising next argues that he should have received compensation for business lost as a result of his back injuries. Reising's evidence of lost business primarily came from the testimony of one expert witness, Dr. Thomas Langford, a consulting economist. Langford supported Reising's claims that, had he not had back problems, he would not have had to sell part of his business and that the parts of the business he retained would have been much more profitable.

The district court determined, however, that Langford's testimony was not credible. Specifically, the district court noted that the assumptions on which Langford based his analysis were flawed. First, Langford assumed that Reising was unable to have any meaningful participation in his business, while, in fact, Reising still owns and operates several of his insurance companies. Further, while Langford assumed that Reising sold one of his insurance businesses because of his injuries, the district court noted that Reising sold the business for a very good price, and that he sold it shortly after his son decided not to join him in business—facts which cast significant doubt on the claim that injury forced Reising into a disadvantageous sale. Finally, Langford assumed unrealistic growth rates both for the business Reising

sold and for the ones he continued to operate. The businesses had never experienced such growth, and the district court noted that significant evidence, not considered by Langford, showed that the businesses would not have achieved such a growth rate even were Reising healthy. Thus the district court concluded that Langford's testimony was "misleading and unsupported." In addition, the court could find no other evidence that Reising had suffered compensable business loss as a result of his back problems, much less as a direct result of the limited worsening of the back problems attributable to the accident. These findings were well supported by the evidence and carefully evaluated by the district court. We do not find them to be clearly erroneous.

### C. Loss of Consortium

■ Finally, Reising claims that he should be compensated for impotency and "loss of normal life," and his wife brings a corresponding claim for loss of consortium. The district court found that Reising's impotency was most likely caused by his blood pressure medication. Further, since Reising had not presented sufficient proof of a link between the accident and the impotency, the district court determined the claim to be meritless. This conclusion is well supported by the evidence and we agree with the district court.

■ The court also found the Reisings' claims of "loss of a normal life" to be without merit. Reising argues that his back injuries have deprived him of his ability to spend time with his family and carry out normal daily activities. We note that Reising, by his own admission, worked 12–16 hour days before the accident. He continues to work long hours but now claims that he has no time or energy for anything but work—a situation that he blames on the accident. The district court did not elaborate on its reasons for denying this claim. However, there is little evidence that the accident caused any significant reduction in the amount of time that Reising spent with his wife and family; in fact, there is little evidence of a decline in energy or in the ability to participate in family life, except as would normally be expected as part of the aging process. Finally,

there is even less evidence that the "limited" effect of the accident caused a reduction in family life except as would have resulted from Reising's preexisting medical problems. Thus the district court's disposition of this claim was not clearly erroneous.

For these reasons, the opinion of the district court is

AFFIRMED.