(No. 60092.—)

RICHARD HOLLIS, Appellee, v. R. LATORIA CON-
STRUCTION, INC., Appellant.

*Opinion filed October 18, 1985.*

RYAN, J., dissenting.

Crooks & Gilligan, Ltd., of Chicago (John W. Gilligan, of counsel), for appellant.

Brian J. Mc Manus & Associates, Ltd., of Chicago (Brian J. Mc Manus, of counsel), for appellee.

JUSTICE WARD delivered the opinion of the court:

Richard Hollis filed an action in the circuit court of Cook County under the Structural Work Act (the Act) (Ill. Rev. Stat. 1981, ch. 48, pars. 60 through 69) against R. Latoria Construction Inc., for injuries sustained while working as a roofer. A jury returned a verdict of $30,000. The circuit court denied the plaintiff's post-trial motion for a new trial on the question of damages only or, alternatively, for a new trial on all issues. The appellate court reversed the order denying the plaintiff's motion and remanded to the circuit court for a new trial on the issue of damages only. (122 Ill. App. 3d 290.) We allowed the defendant's petition for leave to appeal under Rule 315 (87 Ill. 2d R. 315).

The evidence was that the plaintiff was employed as a roofer by a subcontractor of the defendant, at a construction site in Franklin Park. The defendant was the general contractor for the job and acknowledges here that it was in charge of supervising the construction. The plaintiff testified that he was working on a roof of corrugated sheet metal on which there were seven open 4-foot by 4-foot skylights. The plaintiff was operating a machine which spread adhesive on the ridges of the sheet metal. An operator pulled the machine behind him to avoid walking through the freshly applied adhesive. The operator had to closely watch the alignment of the

wheels of the machine to insure that the adhesive was properly spread. When the adhesive was applied, other workers would press the roofing board against the metal to join them together.

On the morning of the accident, the plaintiff testified that he was pulling the adhesive spreader with one hand while walking sideways and looking back to insure the proper wheel alignment of the machine. While spreading adhesive between the skylights, which were about 20 feet apart, the plaintiff fell backwards through one of the skylights 18 feet to a hard-packed dirt floor and was injured.

Daryl Torgerson, a roofer, and Louis Jacobs, an architect and safety engineer, were witnesses for the plaintiff. Their testimony was that, according to the custom and practice in construction work and the roofing trade, the general contractor is responsible for safety on the job site and has the right to halt work if dangerous conditions exist. Jacobs testified that industry codes require guardrails or covers over open skylights, and that his opinion was that having the skylights open without any protective devices violated all code and industry rules and regulations.

Rocco Latoria was called by the plaintiff under former section 60 of the Civil Practice Act (Ill. Rev. Stat. 1981, ch. 110, par. 60; now the Code of Civil Procedure, Ill. Rev. Stat. 1983, ch. 110, par. 2—1102). He testified that he was in the general contracting business as president of the defendant R. Latoria Construction, Inc. As general contractor, he testified that he visited the construction site daily and was aware of the open skylights. He said that guardrails and safety devices to protect the openings would be part of the plans and specifications. Latoria admitted that he had hired the architect who drew the plans, and that he had not required the plans to provide plywood coverings for the skylight

openings. Nor did Latoria instruct anyone working on the job site to place boards over the openings.

X rays revealed that the plaintiff's injuries included fractures of the left elbow, right wrist and left knee. Following corrective surgery, the plaintiff had casts placed on both arms and the left leg. After the casts were removed the plaintiff underwent physical therapy for four months because of pain in his wrist and elbow, and inability to bend his left arm. A second surgical procedure performed on the left arm enabled the plaintiff to bend the arm, but full range of motion was not restored. The plaintiff testified that he was still experiencing pain in both arms, that if he stood for a considerable time his left knee could not support him, and that he is unable to perform manual labor for longer than half an hour.

The plaintiff further testified that as a journeyman roofer he was earning $11.50 an hour when he was injured and that the union hourly wage scale increased to $15.80 at the time of his trial. He was entitled to additional union benefits, including pension provisions. The plaintiff's former employer testified that for the two years preceding his accident the plaintiff worked 40 hours a week as a journeyman roofer on an average of 38 weeks per year. The plaintiff now drives a delivery truck and earns $5 an hour.

Dr. Alvin Kanter, an orthopedic surgeon, testified that he examined the plaintiff several times beginning at the time the plaintiff's casts were first removed. Dr. Kanter testified in detail that the plaintiff had substantial limitations of motion of the left elbow and right wrist. He stated that the plaintiff had suffered a fracture dislocation of the left elbow, which caused pieces of bone to lodge in the joint. Following the second surgery, Dr. Kanter examined the plaintiff numerous times. The doctor stated that although there had been an improvement in the range of motion of the left arm, there was

still a blockage of the elbow joint due to irregularities at the site, including a spur on the humerus. The right wrist still had limited range of motion due to a fracture deformity of the distal radius. The condition of both joints would cause a progressive and degenerative arthritis and would be the source of constant aching and discomfort.

Dr. Kanter testified that the left knee had a limited range of motion and there was grating inside the knee joint, reflecting a tear of the medial meniscus cartilage. He recommended arthroscopic surgery to treat the condition and seek to avoid arthritis in the knee. Dr. Kanter concluded by testifying that, in his opinion, the injuries to the left elbow and right wrist, even with further surgery, would result in a permanent disability. In his opinion, the plaintiff would be unable to return to his work as a roofer, nor would he be able to work in any construction trade.

The plaintiff, called by the defense under former section 60 of the Civil Practice Act (Ill. Rev. Stat. 1981, ch. 110, par. 60; now Ill. Rev. Stat. 1983, ch. 110, par. 2— 1102), testified that he had backed into the open skylight while operating the adhesive spreader. The defense presented no medical or other expert witnesses. At the close of the evidence, the trial court struck an "affirmative defense" the defendant had filed, which alleged that the sole proximate cause of the plaintiff's injuries was his own misconduct. The trial court did, however, permit this special interrogatory to go to the jury:

> "Was the conduct of the plaintiff, Richard Hollis, immediately before and at the time of the occurrence complained of, the sole proximate cause of the injuries and damages complained of by the plaintiff?"

When the jury deliberated and returned the verdict in favor of the plaintiff for $30,000, it answered the interrogatory in the negative. As stated, the plaintiff's post-

trial motion for a new trial on the issue of damages only or a new trial on all issues was denied by the trial court.

The appellate court reversed, holding that in light of the evidence of the plaintiff's injuries, the damages awarded were manifestly inadequate. The court ordered a new trial on the issue of damages only. 122 Ill. App. 3d 290, 297.

The defendant first contends that the appellate court erred in substituting its judgment for that of the jury, when it held that the damages awarded were inadequate.

It is true that the amount of a verdict is generally within the discretion of the jury. (*Lynch v. Board of Education* (1980), 82 Ill. 2d 415, 423; *Guerrero v. City of Chicago* (1983), 117 Ill. App. 3d 348, 352.) It is equally clear, however, that a reviewing court may order a new trial if the damages are manifestly inadequate or if it is clear that proved elements of damages have been ignored or if the amount awarded bears no reasonable relationship to the loss suffered by the plaintiff. *Gall v. Metropolitan Sanitary District* (1982), 109 Ill. App. 3d 502, 510-11; *Eckdahl v. Lease-A-Plane International Licensing* (1979), 69 Ill. App. 3d 864, 869; *Rapp v. Kennedy* (1968), 101 Ill. App. 2d 82, 86.

The appellate court observed that the uncontroverted evidence was that the plaintiff was unemployed for 18 months following his accident and that, based on the average number of weeks the plaintiff had worked the two preceding years and the hourly wage he was earning when injured, he incurred a total wage loss of $24,000. This figure does not include the earnings lost in the period when he reentered the work force and worked at sharply reduced wages. Only the remaining $6,000 of the $30,000 award was available to compensate the plaintiff for these lost wages, and as well the permanent disability and disfigurement caused by the injuries, the pain and suffering experienced, and the loss of future earn-

ings attributable to the permanency of the injuries. The appellate court correctly concluded that, in light of the evidence, the damages awarded were inadequate.

Having judged that the damages awarded were inadequate, it is necessary to determine whether a new trial on all issues, or on damages only, is warranted. In *Balestri v. Terminal Freight Cooperative Association* (1979), 76 Ill. 2d 451, this court, citing *Robbins v. Professional Construction Co.* (1978), 72 Ill. 2d 215, 224, stated:

> "A new trial on the question of damages only is appropriately granted 'where (1) the jury's verdict on the question of liability is amply supported by the evidence; (2) the questions of damages and liability are so separate and distinct that a trial limited to the question of damages is not unfair to the defendant; and (3) the record suggests neither that the jury reached a compromise verdict, nor that, in some other identifiable manner, the error which resulted in the jury's awarding inadequate damages also affected its verdict on the question of liability.' " 76 Ill. 2d 451, 456.

The strict terms of the Structural Work Act established the defendant's liability. The Act provides:

> "That all scaffolds, *** supports, or other mechanical contrivances, erected or constructed by any person, firm or corporation *** for the use in the erection, *** of any house, building, *** or other structure, shall be erected and constructed, in a safe, suitable and proper manner, and shall be so erected and constructed, placed and operated as to give proper and adequate protection to the life and limb of any person or persons employed or engaged thereon, ***." Ill. Rev. Stat. 1981, ch. 48, par. 60.

> "Any owner, contractor *** or other person having charge of the erection, construction, *** of any building, *** or other structure within the provisions of this act, shall comply with all the terms thereof ***.
>
> * * *
>
> For any injury to person or property, occasioned by any wilful violations of this Act, or wilful failure to com-

ply with any of its provisions, a right of action shall accrue to the party injured, for any direct damages sustained thereby; ***." Ill. Rev. Stat. 1981, ch. 48, par. 69.

The defendant does not contest the plaintiff's allegations that (1) it was in "charge of" the construction involved and (2) that it was guilty of a wilful violation of the Act as the evidence showed. The defendant does contend that the verdict was the result of a compromise by the jury on the issue of liability. The plaintiff responds that there was no compromise on the issue of liability and argues that the jury improperly reduced the amount of damages because of defendant's improper and prejudicial references in closing argument to the plaintiff's alleged negligence.

During closing argument, the defendant's attorney argued that the plaintiff's negligent conduct was a contributing cause of his own injuries. Counsel said to the jury:

> "If he [Hollis] was doing his job properly, there would have been no accident. I submit to you that Mr. Hollis himself was the proximate cause of this accident and I'll submit further that the way this accident occurred, he could have walked off the roof of the building just as easily as backed into that hole. Everyone of us has to conduct ourselves in a certain careful way."

The plaintiff's attorney objected, arguing that these comments were contrary to the terms of the Structural Work Act, but the court allowed defendant's attorney to proceed. The defendant's counsel continued:

> "In everything we do, we must do it in a reasonable method or manner. We cannot just go willy-nilly across the middle of the street in heavy traffic and close our eyes, for instance. The law of the Structural Work Act was not intended to protect careless people who fall into holes. The Structural Work Act is a good law. It sets out certain things that are just common sense. It is not intended—No law is intended to protect the foolish behav-

ior and reckless wanton conduct."

Again the plaintiff's attorney objected, but after a side bar conference, the court overruled the objection. The defendant's attorney went on to tell the jury that the Act was not "intended to protect foolish people or wilful wanton acts." These arguments were made though one of the instructions to the jury was:

> "If you decide that the plaintiff has proved all of the propositions of his cause under the Act, then it is not a defense to the plaintiff's claim that some conduct on the plaintiff's part may have contributed to cause the injury."

It is clear that at the time of trial here, 1981, in actions under the Structural Work Act, a plaintiff's contributory negligence or assumption of risk would not bar recovery. *Barthel v. Illinois Central Gulf R.R. Co.* (1978), 74 Ill. 2d 213, 222; *Gannon v. Chicago, Milwaukee, St. Paul & Pacific Ry. Co.* (1961), 22 Ill. 2d 305, 318; *Smith v. Georgia Pacific Corp.* (1980), 86 Ill. App. 3d 570, 573.

The adoption by this court of the doctrine of comparative negligence in *Alvis v. Ribar* (1981), 85 Ill. 2d 1, did not affect a defendant's liability under the Act. This court recently held in *Simmons v. Union Electric Co.* (1984), 104 Ill. 2d 444, that comparative negligence will not be applied in actions brought under the Structural Work Act. It was determined, in *Simmons*, that the application of comparative negligence "would be inconsistent with the legislature's intent, which was to provide full compensation for their injuries for workmen covered by the Act." (104 Ill. 2d 444, 460.) It was said that under the Act the only inquiry "is an assessment of the defendant's culpability and not the plaintiff's conduct." 104 Ill. 2d 444, 459. See also *Prewein v. Caterpillar Tractor Co.* (1985), 108 Ill. 2d 141.

It is clear that the defendant had charge of the construction and wilfully violated the Act by failing to cover

the skylights on the roof of the building. It is also clear that the violation of the Act by the defendant was a proximate cause of the injuries to the plaintiff. This is all that is needed to be proved by the plaintiff to establish the defendant's liability, regardless of the plaintiff's conduct.

The jury's inadequate award was, we consider, the result of the improper argument of the defendant's attorney that the plaintiff's conduct contributed to his own injuries. The plaintiff's conduct is not a factor in an action brought under the Act, as the only consideration is whether the defendant's conduct has been culpable. Since the issues of liability and damages are separate and distinct, the retrial of the cause should be on the issue of damages only.

For the reasons given, the judgment of the appellate court is affirmed.

*Judgment affirmed.*

JUSTICE RYAN dissenting:

This case should be reversed and remanded for a new trial on all issues, not just on the question of damages only. I therefore dissent.

The majority opinion states that the inadequate award was the result of defense counsel's improper argument that plaintiff's conduct contributed to his own injury. Defense counsel's argument, however, was not that the plaintiff's conduct *contributed* to his own injury. Defense counsel stated: "I submit to you that Mr. Hollis himself was *the* proximate cause of this accident." (Emphasis added.) The argument therefore was that plaintiff's conduct was *the* proximate cause not *a* proximate cause of the accident or that it constituted contributory negligence. This was an appropriate argument for defense counsel to make.

Also related to the above analysis, I point out that at

the end of the opinion the majority states: "The plaintiff's conduct is not a factor in an action brought under the Act, as the only consideration is whether the defendant's conduct has been culpable." (108 Ill. 2d at 411.) I do not agree with this statement of the law. It is far too broad. The culpability of the defendant, that is the wilful violation of the Act, must be *a* proximate cause (not necessarily the sole proximate cause) of the injury before liability under the Act attaches. The plaintiff's contributory negligence is not a defense, nor is the plaintiff barred from recovery if his conduct, along with the defendant's violation of the Act, brought about the injury. However, if the plaintiff's conduct is the sole proximate cause of the injury (*the* proximate cause), the defendant is not liable even though there may have been some violation of the Structural Work Act which would not constitute *a* proximate cause. For instance, if a person jumped off a scaffold which happened not to have some required protective device, the absence of which contributed in no way to the injury, the defendant would not be liable under the Act. As previously suggested, the above-quoted statement of the majority opinion is just too broad.

The Act provides that for the injury to be compensable it must be "occasioned by" a wilful violation of the Act. (Ill. Rev. Stat. 1983, ch. 48, par 69.) Although, as noted above, contributory negligence and assumption of the risk are not defenses to a violation under the Structural Work Act, the plaintiff must establish a causal connection between any violation of the Act and his own injury. *Gundich v. Emerson-Comstock Co.* (1961), 21 Ill. 2d 117, 130; *Schultz v. Ericsson Co.* (1914), 264 Ill. 156, 167; *Smith v. Georgia Pacific Corp.* (1980), 86 Ill. App. 3d 570, 573; *Beebe v. Commonwealth Edison Co.* (1977), 45 Ill. App. 3d 43, 48.

In my opinion the argument of defense counsel criti-

cized in the opinion was proper. The inadequacy of the verdict referred to in the majority opinion reflects a compromise between those who thought the plaintiff's conduct was *the sole* proximate cause of his injury and those who felt that the defendant's culpable conduct was *a* proximate cause of the injury. There was evidence in the record from which inferences in support of both positions could be drawn. Therefore, the matter should not be remanded for a trial on the question of damages only, but should be retried on all issues, liability as well as damages. I therefore dissent.